FILED
CLERK, U.S. DISTRICT COURT

OCT - 2 2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____rsm_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>GABRIEL DAVID GUERRERO,<br><br>　　　　　Defendant. | 2:24-CR-00588-PA<br><br>I N D I C T M E N T<br><br>[26 U.S.C. § 7201: Attempt to Evade and Defeat the Payment of Tax; 26 U.S.C. § 7212(a): Endeavoring to Obstruct and Impede the Administration of the Internal Revenue Laws] |

The Grand Jury charges:

## COUNT ONE

[26 U.S.C. § 7201]

A.　INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

Defendant GUERRERO and Warrior Enterprises, Inc.

1.　Defendant GABRIEL DAVID GUERRERO resided in Los Angeles County, within the Central District of California, and was married.

2.　Defendant GUERRERO was a commercial real estate agent based in Los Angeles County who earned income through, among

other ways, commissions on the purchase and sale of commercial properties.

3.  In February 2016, defendant GUERRERO incorporated Warrior Enterprises, Inc. ("Warrior Enterprises"), in the state of California. Defendant GUERRERO listed himself as chief executive officer, chief financial officer, secretary, agent, and sole director of Warrior Enterprises on documents submitted in March 2016 to the California Secretary of State.

4.  Defendant GUERRERO opened the following bank accounts in the name of Warrior Enterprises:

    a.  A City National Bank account in or around February 2016 (the "Warrior Enterprises City National Bank Account");

    b.  A Comerica Bank account in or around March 2016 (the "Warrior Enterprises Comerica Bank Account"); and

    c.  A U.S. Bank account in or around May 2017 (the "Warrior Enterprises U.S. Bank Account," collectively the "Warrior Enterprises Bank Accounts").

<u>Definitions</u>

5.  The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

6.  IRS Form 1040, U.S. Individual Income Tax Return, ("Form 1040") was a form used by U.S. taxpayers to file annual income tax returns.

7.  A substitute for return ("SFR") was a tax return that the IRS prepared for a taxpayer who was required by law to file

a return but did not do so. The IRS prepared SFRs based on information received from taxpayers' employers, banks, and other sources of income and payment.

8. When the IRS was aware that an individual owed taxes, the IRS could send notices of the overdue tax amount to the individual. The IRS could also place liens or levies on the individual's assets to secure payment.

9. A lien was a legal claim against a property that prevented the individual from selling the property until the lien had been released.

10. A levy permitted the legal seizure of an individual's property to satisfy a tax debt and could be used to garnish wages or commissions, take money from financial accounts, and seize and sell assets. When the IRS issued a levy, it sent a notice of the levy (IRS Form 668-A) to the individual listing the tax owed for each tax year and the name of the party or institution to whom the levy was issued.

11. IRS Form 433-A (Collection Information Statement for Wage Earners and Self-Employed Individuals) was used by the IRS to obtain current financial information necessary for determining how a wage earner or self-employed individual could satisfy an outstanding tax liability.

12. A cashier's check was a negotiable instrument issued by a bank and directly drawn on the bank's funds.

IRS Tax Assessments and Collection Efforts

13. Defendant GUERRERO failed to file his individual income tax returns for tax years 1989, 1990, and 1991, and as to those years the IRS prepared SFRs and assessed defendant

GUERRERO $9,215 in tax owed. Defendant GUERRERO did not pay those taxes, and as a result, the IRS filed a tax lien concerning his 1989, 1990, and 1991 tax liabilities in September 1995.

14.  Defendant GUERRERO failed to timely file Forms 1040 for tax years 1998 through 2013.

15.  The IRS prepared SFRs for defendant GUERRERO for tax years 1998, 1999, and 2001 through 2004.

16.  Although, as referenced below, defendant GUERRERO late-filed Forms 1040 for 2002 through 2013, he did not file Forms 1040 for 1998, 1999, and 2001, and he did not contest the amounts of tax that he owed as reported on the SFRs filed by the IRS for tax years 1998 or 1999.

17.  On or about September 21, 2006, defendant GUERRERO agreed that he owed $55,296.87 in tax to the United States for tax year 2001, and he was ordered to pay that amount by the United States Tax Court in Gabriel D. Guerrero v. Commissioner of Internal Revenue, Case No. 11110-05. (Docket No. 8).

18.  On or about April 16, 2014, defendant GUERRERO late-filed Forms 1040 for the years 2002 through 2013. On these tax returns, which defendant GUERRERO signed under penalty of perjury, he reported that he owed income tax totaling $205,699.93 for those years. Specifically, defendant GUERRERO reported that he owed the following amounts of tax (not including interest and penalties), none of which defendant GUERRERO had paid at the time of the late filing:

| Tax Year | Taxes Owed as Reported by Defendant GUERRERO on Late-Filed Form 1040 |
|---|---|
| 2002 | $11,188.00 |
| 2003 | $16,985.00 |
| 2004 | $30,232.00 |
| 2005 | $12,313.00 |
| 2006 | $0.00 |
| 2007 | $0.00 |
| 2008 | $0.00 |
| 2009 | $0.00 |
| 2010 | $0.00 |
| 2011 | $0.00 |
| 2012 | $35,131.00 |
| 2013 | $29,283.00 |
| **TOTAL** | $205,699.93 |

19. From at least in or around October 2013 through in or around March 2017, the IRS attempted to collect defendant GUERRERO's outstanding taxes for the years 1998, 1999, 2001 through 2005, 2012, and 2013, by, among other means, issuing levies to bank accounts that defendant GUERREO used, title companies, brokers with whom defendant GUERRERO worked, and other entities. The IRS sent defendant GUERRERO notices of the levies it issued, which indicated the parties and institutions to whom the levies were issued and the tax that defendant GUERRERO owed for each tax year. Those levies resulted in the collection of only approximately $770.64 toward defendant GUERRERO's outstanding tax liabilities. During the same period

as the IRS collection efforts, defendant GUERRERO earned more than $995,000 in commissions as a commercial real estate agent.

20. After defendant GUERRERO late filed his 2002 through 2013 tax returns, on or about July 29, 2014, an IRS revenue officer informed defendant GUERRERO's representative that defendant GUERRERO owed more than $325,000 in taxes for tax years 1998, 1999, 2001 through 2005, 2012, and 2013.

21. On or about September 29, 2015, the IRS sent a letter (IRS Letter 728-A) to defendant GUERRERO stating that defendant GUERRERO owed $344,307.77, including taxes, penalties, and interest, as reflected in the following table:

| Tax Period | Unpaid Tax Amount from Prior Notices | Additional Penalties | Additional Interest | Total Amount Owed |
|---|---|---|---|---|
| 1998 | $9,776.42 | $0.00 | $271.27 | $10,047.69 |
| 1999 | $7,052.47 | $0.00 | $195.68 | $7,248.15 |
| 2001 | $100,517.51 | $0.00 | $2,789.03 | $103,306.54 |
| 2002 | $28,044.27 | $0.00 | $778.14 | $28,822.41 |
| 2003 | $40,195.46 | $0.00 | $1,115.29 | $41,310.75 |
| 2004 | $53,844.46 | $0.00 | $1,494.00 | $55,338.46 |
| 2005 | $8,339.84 | $0.00 | $335.35 | $8,675.19 |
| 2012 | $47,085.19 | $5,094.00 | $1,894.66 | $54,073.85 |
| 2013 | $30,073.79 | $4,200.80 | $1,210.14 | $35,484.73 |
| **TOTAL** | | | | $344,307.77 |

22. On or about April 13, 2016, the IRS faxed a letter (IRS Letter 728-A) to defendant GUERRERO's representative stating that defendant GUERRERO owed $353,208.87, including

taxes, penalties, and interest, as reflected in the following table:

| Tax Period | Unpaid Tax Amount from Prior Notices | Additional Penalties | Additional Interest | Total Amount Owed |
|---|---|---|---|---|
| 1998 | $10,079.12 | $0.00 | $138.74 | $10,217.86 |
| 1999 | $7,270.82 | $0.00 | $100.07 | $7,370.89 |
| 2001 | $103,629.69 | $0.00 | $1,426.42 | $105,056.11 |
| 2002 | $28,912.56 | $0.00 | $397.96 | $29,310.52 |
| 2003 | $41,439.97 | $0.00 | $570.40 | $42,010.37 |
| 2004 | $55,511.56 | $0.00 | $764.08 | $56,275.64 |
| 2005 | $8,702.33 | $0.00 | $119.78 | $8,822.11 |
| 2012 | $54,929.68 | $351.31 | $756.08 | $56,037.07 |
| 2013 | $36,162.00 | $1,448.55 | $497.75 | $38,108.30 |
| **TOTAL** | | | | $353,208.87 |

23.  From in or around March 2005 through in or around October 2017, the IRS sent defendant GUERRERO approximately 82 notices relating to his unpaid individual income taxes he owed for tax years 1998, 1999, 2001 through 2005, 2012, and 2013. From in or around March 2007 through in or around June 2016, the IRS additionally issued approximately 66 levies and filed 4 tax liens relating to defendant GUERRERO's unpaid individual income taxes he owed for tax years 1998, 1999, 2001 through 2005, 2012, and 2013.

//

B.   **EVASION OF PAYMENT OF TAXES**

24.   From at least in or around October 2013 through at least in or around November 2017, in Los Angeles County, within the Central District of California and elsewhere, defendant GUERRERO willfully attempted to evade and defeat the payment of income tax due and owing to the United States for tax years 1998, 1999, 2001, 2002, 2003, 2004, 2005, 2012, and 2013, by committing the following affirmative acts, among others:

   a.   From at least in or around January 2014 through in or around July 2016, defendant GUERRERO directed brokers and others who paid him commissions to break up those commission payments into multiple, lower-denominated checks instead of paying him in lump-sum direct deposits –- the manner by which he had received commissions prior to the start of the IRS's collection efforts in 2013. Defendant GUERRERO held many of these commission checks until he needed funds to pay personal expenses, thereby limiting the amount of funds deposited into his bank accounts that the IRS could levy and apply toward defendant GUERRERO's outstanding tax liabilities;

   b.   From at least in or around January 2014 through in or around July 2016, defendant GUERRERO used his commission payments to purchase cashier's checks from the bank accounts he used or controlled and structured his use of the cashier's checks to prevent the IRS from obtaining the money he owed. Defendant GUERRERO made, or caused to be made, the cashier's checks payable to himself or Warrior Enterprises and held the cashier's checks outside of his bank accounts, often for months, depositing the cashier's checks into the bank accounts when he

needed funds to pay personal expenses. By doing so, defendant GUERRERO limited the amount of funds in his bank accounts that the IRS could have levied to satisfy his outstanding tax liabilities. In total, defendant GUERRERO purchased, and caused to be purchased, approximately 35 cashier's checks totaling approximately $615,000 between at least in or around January 31, 2014, and in or around June 22, 2016. Examples of such affirmative acts of evasion include, but are not limited to:

    i.    On or about January 31, 2014, defendant GUERRERO used a $27,000 commission check issued to him on that same date to purchase a $20,000 cashier's check made payable to himself.

    ii.    On or about April 15, 2014, defendant GUERRERO used three commission checks, each in the amount of $30,000, issued to him on or about January 31, 2014, to purchase a $90,000 cashier's check made payable to himself.

    iii.    On or about July 25, 2014, defendant GUERRERO deposited the aforementioned $90,000 cashier's check into a Wells Fargo Bank account on which his parents were the primary account holders ("his parents' Wells Fargo Bank Account"). On or about July 26, 2014, using the recently deposited proceeds from the $90,000 cashier's check, defendant GUERRERO purchased four cashier's checks from his parents' Wells Fargo Bank Account worth approximately $60,000 and made payable to himself.

    c.    From at least in or around October 2013 through in or around August 2015, defendant GUERRERO used his parents' Wells Fargo Bank Account to deposit his commission income and

other funds and purchase cashier's checks that he retained and kept out of bank accounts until he needed funds to pay personal expenses;

      d. Defendant GUERRERO used the Warrior Enterprises' Bank Accounts to conceal his income and other funds from the IRS. For example:

          i. From at least in or around February 2016 through in or around July 2016, defendant GUERRERO used the Warrior Enterprises City National Bank Account and the Warrior Enterprises Comerica Bank Account to conceal his income from the IRS by (1) depositing into the bank accounts cashier's checks that he had purchased with the proceeds from his commission checks; and (2) directing a broker, and others, to divide his commission payments into multiple checks made payable to Warrior Enterprises.

          ii. In or around May 2017, defendant GUERRERO directed that a $35,000 commission payment be wired to the Warrior Enterprises U.S. Bank Account.

      e. On or about December 5, 2014, during the course of the IRS's collection efforts, defendant GUERRERO prepared and caused to be prepared, submitted and caused to be submitted to the IRS, a false Form 433-A, which he signed under penalties of perjury. The Form 433-A was false in that it (1) significantly underreported defendant GUERRERO's monthly gross income and (2) failed to disclose his parents' Wells Fargo Bank Account, into which he deposited his real estate income;

      f. From at least in or around December 2014 through about December 2016, defendant GUERRERO arranged with Real

Estate Broker 1 to receive advance payments of defendant GUERRERO's anticipated commission payments, which he in turn used to pay his personal expenses. Defendant GUERRERO orchestrated this means of receiving income to avoid money being paid directly to him as commission payments upon closing of real estate transactions.

g.   From at least as early as in or around December 2014 and continuing through in or around December 2016, defendant GUERRERO arranged to have Real Estate Broker 1 pay defendant GUERRERO's expenses, including tuition for his children's schooling, and provide defendant GUERRERO with a credit card for his use. The expenses paid on defendant GUERRERO's behalf were deducted from defendant GUERRERO's commission payments at the closing of his real estate transactions, thereby concealing from the IRS the true amount of his commission payments from those transactions and ensuring that defendant GUERRERO never himself possessed the funds used to pay for those expenses; and

h.   Throughout the course of the IRS's collection efforts, from in or around October 2013 through at least in or around November 2017, defendant GUERRERO dealt extensively in cash and cashier's checks, withdrawing significant cash funds from bank accounts to which he had access, both in person and via ATMs and additionally converting checks directly to cash.

//

COUNT TWO

[26 U.S.C. § 7212(a)]

25.   The Grand Jury hereby re-alleges paragraphs 1 through 23 of this Indictment here.

26.   From at least in or around October 2013 through at least in or around November 2017, in Los Angeles County, within the Central District of California and elsewhere, defendant GUERRERO, knowing of and reasonably foreseeing the IRS collections proceedings described in paragraph 19, corruptly obstructed and impeded, and corruptly endeavored to obstruct and impede, the due administration of the internal revenue laws of the United States, that is, the IRS's efforts to collect his outstanding 1998, 1999, 2001 through 2005, 2012, and 2013 tax liabilities, by committing and causing to be committed various acts, each such act having a nexus to the IRS collections proceedings, including, but not limited to, the following:

   a.   From at least in or around January 2014 through in or around July 2016, defendant GUERRERO directed brokers and others who paid him commissions to break up those commission payments into multiple, lower-denominated checks instead of paying him in lump-sum direct deposits –- the manner by which he had received commissions prior to the start of the IRS's collection efforts in 2013. Defendant GUERRERO held many of these commission checks until he needed funds to pay personal expenses, thereby limiting the amount of funds deposited into his bank accounts that the IRS could levy and apply toward defendant GUERRERO's outstanding tax liabilities;

   b.   From at least in or around January 2014 through

12

in or around July 2016, defendant GUERRERO used his commission payments to purchase cashier's checks from the bank accounts he used or controlled and structured his use of the cashier's checks to prevent the IRS from obtaining the money he owed. Defendant GUERRERO made, or caused to be made, the cashier's checks payable to himself or Warrior Enterprises and held the cashier's checks outside of his bank accounts, often for months, depositing the cashier's checks into the bank accounts when he needed funds to pay personal expenses. By doing so, defendant GUERRERO limited the amount of funds in his bank accounts that the IRS could have levied to satisfy his outstanding tax liabilities. In total, defendant GUERRERO purchased, and caused to be purchased, approximately 35 cashier's checks totaling approximately $615,000 between at least in or around January 31, 2014, and in or around June 22, 2016. Examples of such affirmative acts of evasion include, but are not limited to:

i.   On or about January 31, 2014, defendant GUERRERO used a $27,000 commission check issued to him on that same date to purchase a $20,000 cashier's check made payable to himself.

ii.   On or about April 15, 2014, defendant GUERRERO used three commission checks, each in the amount of $30,000, issued to him on or about January 31, 2014, to purchase a $90,000 cashier's check made payable to himself.

iii.   On or about July 25, 2014, defendant GUERRERO deposited the aforementioned $90,000 cashier's check into a Wells Fargo Bank account on which his parents were the primary account holders ("his parents' Wells Fargo Bank

Account"). On or about July 26, 2014, using the recently deposited proceeds from the $90,000 cashier's check, defendant GUERRERO purchased four cashier's checks from his parents' Wells Fargo Bank Account worth approximately $60,000 and made payable to himself.

   c. From at least in or around October 2013 through in or around August 2015, defendant GUERRERO used his parents' Wells Fargo Bank Account to deposit his commission income and other funds and purchase cashier's checks that he retained and kept out of bank accounts until he needed funds to pay personal expenses;

   d. Defendant GUERRERO used the Warrior Enterprises' Bank Accounts to conceal his income and other funds from the IRS. For example:

    i. From at least in or around February 2016 through in or around July 2016, defendant GUERRERO used the Warrior Enterprises City National Bank Account and the Warrior Enterprises Comerica Bank Account to conceal his income from the IRS by (1) depositing into the bank accounts cashier's checks that he had purchased with the proceeds from his commission checks; and (2) directing a broker, and others, to divide his commission payments into multiple checks made payable to Warrior Enterprises.

    ii. In or around May 2017, defendant GUERRERO directed that a $35,000 commission payment be wired to the Warrior Enterprises U.S. Bank Account.

   e. On or about December 5, 2014, during the course of the IRS's collection efforts, defendant GUERRERO prepared and

caused to be prepared, submitted and caused to be submitted to the IRS, a false Form 433-A, which he signed under penalties of perjury. The Form 433-A was false in that it (1) significantly underreported defendant GUERRERO's monthly gross income and (2) failed to disclose his parents' Wells Fargo Bank Account, into which he deposited his real estate income;

   f. From at least in or around December 2014 through about December 2016, defendant GUERRERO arranged with Real Estate Broker 1 to receive advance payments of defendant GUERRERO's anticipated commission payments, which he in turn used to pay his personal expenses. Defendant GUERRERO orchestrated this means of receiving income to avoid money being paid directly to him as commission payments upon closing of real estate transactions.

   g. From at least as early as in or around December 2014 and continuing through in or around December 2016, defendant GUERRERO arranged to have Real Estate Broker 1 pay sdefendant GUERRERO's expenses, including tuition for his children's schooling, and provide defendant GUERRERO with a credit card for his use. The expenses paid on defendant GUERRERO's behalf were deducted from defendant GUERRERO's commission payments at the closing of his real estate transactions, thereby concealing from the IRS the true amount of his commission payments from those transactions and ensuring that defendant GUERRERO never himself possessed the funds used to pay for those expenses; and

   h. Throughout the course of the IRS's collection efforts, from in or around October 2013 through at least in or

15

around November 2017, defendant GUERRERO dealt extensively in cash and cashier's checks, withdrawing significant cash funds from bank accounts to which he had access, both in person and via ATMs and additionally converting checks directly to cash.

//

//

27. When he took the above actions described in paragraphs 26(a) through 26(h), inclusive, defendant GUERRERO knew about the IRS collection action described in paragraph 19, including the amounts that he owed according to IRS notices and the levies that the IRS issued.

A TRUE BILL

/S/
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

ROGER A. HSIEH
Assistant United States Attorney
Deputy Chief, Major Frauds Section

STEVEN M. ARKOW
Assistant United States Attorney
Major Frauds Section

ROBERT A. KEMINS
CHRISTOPHER J. GERACE
Trial Attorneys, Tax Division
United States Department of Justice